OPINION

Per Curiam:

A jury convicted Lerlene Evonne Roever of the first degree murder of Ian Wilhite. Roever and Wilhite were lovers and were living together in a trailer home in Pahrump, Nevada. On the morning of January 16, 1993, after allegedly spending the night on the couch in the living room, Roever found Wilhite’s dead body in the bedroom. He had one bullet lodged in the base of his skull and had been shot while asleep in bed the previous night. Roever told police that she and Wilhite had argued the night before and therefore, she had slept on the couch in the living room.
The State arrested Roever and charged her with the murder. Roever pleaded not guilty. All the State’s evidence against Roever was circumstantial. The investigation did not uncover any physical evidence linking Roever to the crime nor did it uncover the murder weapon. The State’s theory was that Roever was the only person with a possible motive and the opportunity to shoot *1054 Wilhite. The case went to trial and the jury convicted Roever of first degree murder with use of a deadly weapon. She was sentenced to two consecutive life terms of imprisonment.
The jury also convicted Roever for possession of marijuana after investigators found three small bags of the substance in two different areas of the bedroom she shared with Wilhite. Roever admitted to smoking marijuana on occasion. She received a one-year sentence for this charge.
Roever makes seven arguments on appeal: (1) the evidence is insufficient to convict her of Wilhite’s murder; (2) the evidence is insufficient to convict her of possession of marijuana; (3) a new trial is warranted due to improper witness-juror contact; (4) the convictions should be reversed due to the State’s violation of discovery; (5) the late endorsement of the State’s witness, dispatcher Ruth Lamp, was error; (6) jury instruction 34, the polygraph instruction, failed to properly advise the jury; (7) the district court erred in allowing rebuttal witnesses to testify regarding Roever’s character.
We conclude that the witness-juror contact and the State’s discovery violation warrant reversal. We hold that these errors resulted in a denial of Roever’s constitutional right to a fair trial.
Roever contends that improper witness-juror contact prejudiced her right to a fair trial. According to an affidavit of Timothy White, an investigator for the defense, one of the State’s witnesses ignored the court’s admonition not to converse with the jury. According to White, Investigator Frank Ruas, a State witness and the primary investigator at the crime scene, conversed with several jurors at two breaks during the trial in the only designated smoking area in the courthouse. White saw Ruas in the smoking room with three female jurors, but did not hear any of their conversation because he did not join them.
After the jury rendered its verdict, Roever’s attorney contacted and interviewed several jurors regarding these incidents. One of the jurors in the designated smoking area, Robert Catchings, noted that Ruas spent ten minutes with other jurors on the first occasion and approximately five to eight minutes on the second occasion. It appeared to Catchings that Ruas was “trying to enhance his image.” Catchings noted that Ruas had a smoke with the jurors after the jurors heard the tapes of his interrogation of Roever. Catchings stated that in the interrogation tapes, Ruas’s questioning of Roever got “pretty heated” and Catchings got the impression that Ruas was trying to “soften any images we may have had.” Catchings did not hear Investigator Ruas say anything regarding the case to any member of the jury.
Roever’s attorney also contacted Audrey Sauvageau and Tyra Van Engen, two jurors who had spoken with Ruas while in the *1055 smoking area. Sauvageau told Roever’s attorney that her conversation with Ruas had nothing to do with the case.
Based on this information, Roever moved for a new trial alleging juror misconduct. The district court held a hearing on the motion. After receiving testimony on the matter, the district court stated:
[I]t cannot be said with any degree of certainty the contacts made by the witness had no effect on the jury’s verdicts. At the very least, the conduct itself suggests the witness was attempting to curry favor with the jurors. It is clear the State has the duty to see their witnesses are properly cautioned about conduct of this nature and their witnesses are sequestered from contact with the jury panel.
However, in its determination of whether any prejudice occurred, the district court stated that “[i]n the case in point there is little doubt in the court’s mind that any evidentiary canvass of the jury panel would disclose the contacts were insignificant.” Accordingly, the district court denied Roever’s motion for a new trial.
Not every incidence of contact between jurors and witnesses requires the granting of a motion for new trial. See Barker v. State, 95 Nev. 309, 313, 594 P.2d 719, 722 (1979). The proper standard to be applied is that a new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted. See id. The trial court determines whether the litigant has been prejudiced, and its judgment will not be overturned unless abuse of discretion is manifest. See id.
In the case at hand, Ruas smoked a cigarette with the jurors in the only designated smoking area in the building during two breaks in the trial. The district court determined that no prejudice resulted to Roever, yet, in the same breath it also stated that “it cannot be said with any degree of certainty the contacts made by the witness had no effect on the jury’s verdicts.” We hold that the district court erred in denying the motion for a new trial since the district court not only failed to conclude beyond a reasonable doubt that no prejudice resulted, but also recognized that prejudice may have resulted from the contact.
Roever further contends that she is entitled to a new trial due to the State’s discovery violation. During the defense’s cross-examination of Officer Nicholson, another investigator at the crime scene, the defense discovered that Nicholson had tape-recorded Roever without her knowledge during an interview on the morning of Wilhite’s death. At trial, the district attorney was in possession of the tape-recording and its transcription as well as *1056 another tape-recording of Roever made by another police officer and its transcription. Defense counsel had neither been advised of the existence of these tapes, nor provided copies or transcripts of them.
The disclosure of these materials necessitated a trial recess of over two hours in order for the defense to review the tapes and to compare them with the typewritten transcripts so that the defense could consider what objections to make. The tapes disclosed the possibility that an additional person was present the night Wilhite was murdered because Roever commented that she heard “giggling” from the bedroom that night. The district court noted that the tapes give “one a better insight into the defendant at that time.”
Roever raised this issue in her motion for a new trial. The district court stated in its order denying the motion:
The State has diliberately [sic] violated what is clearly settled law as far as discovery is concerned or because of a reckless disregard for the defendant’s rights and a failure to use due diligence in reviewing their own case they failed to become aware of the existence of this crucial evidence. In any event the failure of the State cannot be characterized as harmless and it forced the defendant to respond without the benefit of a more thoughtful review and the ability to plan the strategy of their case.
This statement clearly reflects the district court’s opinion that the State violated the discovery order. Nevertheless, the court denied the motion for a new trial, stating:
In conclusion, although the Court cannot conclude beyond a reasonable doubt the errors committed in the trial resulted in no prejudice to the defendant, the resolution and ruling on this matter is best done by the Supreme Court and not by this Court.
The district court declined to exercise its power to grant a new trial and deferred this determination to this court.
Sitting as the trier of fact, the district court failed to determine whether the prosecution’s failure to provide discovery prejudiced Roever so as to warrant a new trial. We hold that this was error. We cannot conclude that the State’s discovery violation and the improper witness-juror contact did not result in prejudice to Roever. We hold that Roever’s right to a fair trial was prejudiced.
As to Roever’s remaining contentions, we conclude after careful review that they are without merit. Accordingly, we reverse and remand this case for a new trial on the charges.